17060

L. D. WEATHERS, JR., Plaintiff-Appellant, v. FRANK P. GARY, Defendant-Respondent

(88 S. E. (2d) 871)

*E. W. Johnson, Esq.,* of Spartanburg, *for Appellant,*

*Claude R. Dunbar, Esq.,* of Spartanburg, *for Respondent,*

August 25, 1955.

BAKER, Chief Justice.

This is an appeal from an order of the County Court of Spartanburg cancelling a judgment obtained by the plaintiff-appellant against the defendant-respondent. For convenience, the appellant herein will hereafter be referred to as plaintiff, and the respondent as defendant.

Plaintiff, a rural storekeeper, purchased from the defendant an ice making machine and subsequently claimed that its operation was entirely unsatisfactory. The matter was placed in the hands of plaintiff's attorney who, on April 2, 1953, wrote the defendant and the manufacturer about the same. Neither answered the communication and on April 15, 1953, the defendant was personally served with a summons and verified complaint. On this service the defendant defaulted, and on June 22, 1953, at a regular term of the Court, testimony was taken. Thereafter on the same date, plaintiff wrote to the manufacturer again telling it of his complaints about the machine and the letter of April 2, and that he had received no reply either from the company or

the defendant Gary; and, further, that he, plaintiff, had that day been given a judgment against defendant; that he, plaintiff, failed to understand the Company's attitude about the machine, and concluded by saying that all he really wanted was a *satisfactory* ice making machine. (Emphasis added.)

On June 26, 1953, based upon the testimony previously taken, the Court handed down its order holding, in part:

"I find as a matter of fact and of law that the defendant is in default, and from the testimony it clearly appears that the plaintiff is entitled to the actual damages sought in his complaint."

This judgment, for the purchase price of the machine, carrying charges and costs, was, on the same date, properly indexed and enrolled.

On June 26, 1953, the Company wired plaintiff in reply to his letter of June 22nd that the writer had talked with Gary, that he was to get in touch with plaintiff, and would make every effort to get the machine to work; and complete cooperation of the Company was assured. Upon receiving the telegram and after talking with the said defendant on the telephone, plaintiff, on the same day, wrote to Gary, sending a copy to the Company, stating that the machine had been unsatisfactory, that it was useless to repair it, that all he wanted was a machine that would give *satisfactory* service in the future; that if this could not be done he wanted his money back. (Emphasis added.) Thereafter, on July 24, 1953, the defendant installed a new machine and picked up the old. But the defendant made no claim that he bought this second machine and, on the contrary, it appears inescapable that it was furnished in response to plaintiff's letter of June 22, 1953. On August 28, 1953, plaintiff again wrote the Company as follows:

"8-28-53
Pacolet, S. C.

"Attention:
    Mr. R. A. Hogeland
        4100 Fulton Ave.
            Chicago, Ill.

"Dear Mr. Hogeland

*"I appreciate what you have done to give me a satisfactory Ice Maker but the new machine still isn't giving satisfactory service.* On July 24th Mr. Gary installed my new Ice maker. Several days later I called Mr. Gary and reported the new machine not making much Ice and making a lot of noise when the air compressor was running. He came down and stopped the noise and told me he would have the factory representative come and check the machine for the out put of ice. I haven't heen (seen?) your representative as yet and am still not getting any production much. I have checked the out put quite a few times and fourty to fifty pounds in twelve hours is about the capacity it is producing. When I purchased my first Ice Maker it was my understanding that it would produce 100 pounds in 24 hours. I would appreciate your prompt attention to this matter. I have called Mr. Gary several times and he said the factory representative hasn't shown up.

*"Again I want to thank you for your efforts in trying to give me a satisfactory Ice Maker.*

Sincerely Yours

L. D. Weathers, Jr."

(Emphasis added.)

(The 100 pounds in 24 hours was later shown by uncontroverted affidavit to be 300 pounds in 24 hours.)

There the matter rested until in January, 1954, when an execution on the judgment was placed in the hands of the Sheriff of Spartanburg County, who, on January 28, 1954, wrote defendant a letter about the judgment and requested settlement. Thereafter, failing to collect, the Sheriff made a

*nulla bona* return. On July 19, 1954, the County Court issued its order, upon petition therefor, directing the defendant Gary to appear in supplementary proceeding before the Master on August 11, 1954. On that date defendant appeared by counsel and requested a continuance. By agreement of counsel for both, with no prejudice to either, defendant deposited with the Master the sum of money deemed sufficient to satisfy the judgment. On that same day counsel for plaintiff wrote counsel for the defendant authorizing and requesting the removal of the second ice machine. For reasons assigned by letter of defendant's counsel, this was declined.

On August 16, 1954, notice of a motion was served upon plaintiff's counsel to set aside the judgment and to be allowed to file an attached proposed answer, and to have the case heard on the merits before a jury upon the issues thus made. (No issue is made as to this notice not having been served upon the plaintiff.) This motion came on to be heard on September 27, 1954, at chambers. Before this date, however, both plaintiff and his counsel, by affidavit, made return.

It serves no useful purpose to set forth in detail the allegations of the lengthy proposed answer or the return affidavits. The answer related matters concerning the subject transaction "from Dan even to Beersheba." The primary issue in this case is: *Did the defendant comply with the statutory provisions relating to the reopening of default judgments?* Section 10-1213 of the 1952 Code has been construed time and again and we believe in doing so, every possible contention that could be raised by the defendant has been passed upon. However, it is necessary to see how he meets the burden, bearing in mind that what he did after the entry of the judgment is of little if any value in determining his status before and affecting his right to reopen and to be relieved from his claimed mistake, inadvertence, surprise or excusable neglect.

In his proposed answer defendant says when he received the letter of April 2, 1953, he contacted plaintiff personally and talked with him; that when, on April 15, 1953, he was served the summons and complaint, he telephoned the plaintiff. The plaintiff in his affidavit denies without reservation that either of these conversations, or any other like them, ever occurred. Defendant denied actual knowledge of the judgment but it is not denied that it was properly indexed and enrolled on the 26th day of June, 1953. Defendant denied receiving the letter about the judgment dated January 28, 1954, from the Sheriff, but this letter was not returned to the sender. It is not denied that thereafter the Sheriff made a *nulla bona* return. The record shows that defendant made no effort to reopen the judgment of June 26, 1953, until August 16, 1954, and then only after he was up on supplementary proceedings.

The service of the summons and complaint set in motion the orderly process of the law, and such service cannot be ignored. Nor can the effect of the service be removed by a claimed telephone conversation with the plaintiff, which conversation the latter says never occurred. We pointed out in *Brown v. Nix*, 208 S. C. 230, 37 S. E. (2d) 579, that when a man has a case in court the best thing he can do is attend to it with the amount of attention a man of ordinary prudence usually gives to his important business. By way of explanation of his failure to act upon the summons and complaint, defendant, in his proposed answer, set up:

"On the same date that defendant was served with said papers he called the plaintiff over the telephone and told the plaintiff that he had received the papers and that he was still trying to get the factory to give plaintiff a new machine. Whereupon, plaintiff told defendant that all he wanted was a new machine."

If we arbitrarily assume that the above conversation took place, it does not show a valid reason for granting relief from the judgment entered. But aside from that, defendant is met with an insurmountable difficulty.

When the judgment was enrolled, knowledge thereof was imputed to defendant and such adjudication ought not to be lightly set aside, and it cannot be set aside unless the method provided by Code Section 10-1213 is strictly followed. An essential provision of this Section is to apply for relief within one year. *Witt v. Leusath,* 160 S. C. 251, 158 S. E. 226. Also, see *Anderson v. Toledo Scale Co.,* 192 S. C. 300, 6 S. E. (2d) 465.

While not called upon to consider the merits of defendant's proposed defense, we have done so. The complaint alleged the failure of approximately twenty servicing trips to put the machine in order; the proposed answer admits a minimum of twenty-seven, with additional complaints unanswered. This negatives any idea of the proper functioning of the machine, the improper functioning being the basis of plaintiff's cause of action.

The lower Court heard the first motion at chambers, but by a subsequent order called the parties back at a regular term for further hearing, and after hearing a further motion, made in the interim by defendant, concluded that there had been a novation between the parties and ordered plaintiff's judgment stricken. This apparently left plaintiff with the remedy of proceeding against the defendant for the second machine if it was defective as plaintiff contended.

It was error for the Court to grant defendant relief which he neither sought nor was entitled to under his motions. It cannot be overlooked that the rights of a plaintiff as well as those of a defendant must be protected, and to strike down plaintiff's judgment and actually try the case on its merits on a proposed answer is not in accord with any known principles of law or procedure. Such an order, if allowed to stand, would leave plaintiff with the very doubtful remedy of proceeding against the defendant for the defects in the second machine, which was defendant's theory that there had been a novation, while the plaintiff, by his return, had denied the existence of a state of facts upon which a novation could be predicated.

112

It is not necessary to pass upon the other assignments of error.

For the reasons herein given, the order appealed from is reversed and the judgment in favor of plaintiff stricken under the order of the lower Court is ordered restored.

Reversed.

STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.